24-1879. Counselor Bass, you have reserved four minutes of your time for rebuttal. Yes, Your Honor. All right. Looks ready to go. Thank you, Judge Rayna, and may it please the Court. In the trial below and in the post-judgment motions below, the plaintiff, SynQor, relied exclusively on a willful blindness theory. That theory is insufficient as a matter of law for at least two reasons. One, there is not substantial evidence of deliberate action taken specifically to avoid confirming knowledge of infringement. Secondly, willful blindness is insufficient as a matter of law to establish the specific and deliberate intent required for willfulness. For both of those reasons and others in our brief, we're asking for reversal. One thing that I think is important here is the timeline. The only patent left in this case on appeal, the 702 patent, was not issued until 2009, so well into this other trial of these other defendants. There's no evidence in the record. We were aware of that patent, we being Vicor, until mid-2010 when those other defendants bring us into the case as the non-infringing alternative. At that point, the plaintiff in this case, SynQor, does not send us a letter saying, no, we actually think you infringe, does not accuse us of infringement. It's not until December of 2010 in the trial that we're not in. When did Cisco approach your client? I think the record evidence, Your Honor, shows September of 2010 with respect to the issues relevant here. I think there was probably a relationship on other issues before that. And Vicor was no doubt familiar with this 497 litigation before December 2010 too, right? Oh, I think that's fair, Judge Chen. But, of course, we're brought into that litigation as the non-infringing alternative, and the plaintiff doesn't even take the opportunity at that point to accuse us. But Cisco wanted some assurances that if you were going to provide them with these products, with these power converters, that they wouldn't infringe. Isn't that right? And instead of giving them that kind of assurance through an opinion letter, Vicor said, well, we'll just indemnify you. Oh, gosh, Judge Chen, that's not at all only what happened. Let me correct two things, and I don't think this can reasonably be disputed even on substantial evidence review. First, the request that you're referring to is at page 76858 of the record. And what Cisco said is it might be good if you issued some statement that you don't infringe, but actually what would be more helpful to keep it non-public is just a conversation between the lawyers. There's no evidence that conversation didn't happen. But more importantly, it's not just the indemnification, which, by the way, I think shows that we thought we didn't infringe because we're taking on a financial burden to pay if we infringe. Two different ways you can read that. I think it goes far more strongly. But the most important thing is that we immediately redesign our products to avoid the claim construction in the 497 case. The construction was that short transitions requires under 20 percent. We immediately redesign our products and assure these customers that, of course, we want to pick up as part of market share that we don't think we infringe anyway, but we've now lengthened this to avoid literal infringement. Judge Freeman, I'm sorry, I cut you off. Mr. Bash, you had a jury verdict where your company's non-infringement position was not accepted by the jury, and you were aware of that. And you also, it seems throughout your brief, you're asking us, rather than to consider substantial evidence, to actually draw all inferences in favor of Vicor's position on this willful blindness issue. So the way I read the record is that the jury was presented with ample evidence of your client's conduct in watching its competitors, not that that's unlawful conduct, but they understood and could reasonably consider the manner in which your client studied the conduct of its competitors and how it positioned itself to gain market share, and that the timing of Vicor's assistance to these clients who had lost the products that were unlawful under the 497 was an opportunity that the jury didn't find was an honest opportunity, but rather was bringing in another infringing product. Plus, the record shows that, yes, you redesigned for the 25%, but you didn't take off the market or recall the product that still had the timing of under 20%. Judge Freeman, there's a lot there. Let me make three points in response. I want to make sure I have them all in my head. First, just a factual response. We were not necessarily found to infringe in the 497 case. We were either an infringing alternative or not an alternative, not a possible alternative. Remember, our products didn't fit those customers at the time. We had to change them. So, no, we were not aware. And, by the way, the jury was told they couldn't use that verdict as evidence of infringement here, and that's undisputed on appeal. So that's one. Two, I'm taking your last point next. With respect to these products that were above the 20% transition, and so the argument was over literal infringement. Remember, and I'm happy to talk about why they've waived an actual knowledge requirement for Waste Sunday theory, but at that point, December 2010, there's this verdict. We file a declaratory judgment action. We have lawyers look at it. We say, Judge, we want you to say we don't infringe. Whatever you think about our mens rea at that point forward, that cannot possibly be willful blindness. Even with respect to these literal products. We've looked at the claims. We've had a lawyer look at them. We filed a declaratory judgment action. That's the only theory they pursued below. What about the activity after Cisco sought identification? The activity after Cisco? Oh, this is all a very short period. So our discussions with Cisco start in September 2010. The infringement verdict on the other case is December 2010. By January 2011, we filed a declaratory judgment action, and we've rolled out products that everybody agrees do not literally infringe the patent. So that's all a very short period of time. Whatever you think, I mean, even if you thought, well, maybe you could get actual knowledge on the literally infringing devices afterwards, they waived that theory. The only thing they argued was willful blindness. It can't possibly be that once we're filing a declaratory judgment action saying we don't infringe, that's willful blindness. I mean, we've looked at the patent. We have lawyers look at the patent. We're filing an action in court. That's the only theory they preserved below. Judge Rayna, on the indemnification. Is there a case law that says once a DJ action is filed, there can never be any willful blindness theory of liability thereafter? I'm not aware of a case either way, Judge Chen, but I think it follows ineluctably from global tech and the standard. I mean, the standard for willful blindness is you are avoiding confirming infringement by taking deliberate action. The question I have is clearly the jury found you liable for induced infringement and also willful infringement. But the damages amount is very small that it awarded compared to what it could have awarded, what the plaintiff requested. So we can't really tell which products the jury might have been focused on. It could have been focused on the pre-complaint filed products. It could have been focused on the non-modified power converters. It's hard to know because we have a black box jury verdict here. But the point is, is that even if we were to agree with some of these arguments about this piece, that piece, maybe not being a perfect fit for some of these different infringement theories, nevertheless, the damages amount that was awarded is so small that one could see a way to work around your more piecemeal arguments. Well, I hope you don't think that, Judge Hanks. I don't think that's right. On the central argument on liability, the argument on indirect infringement, there is simply no deliberate action taken to avoid confirming infringement. Even if you disagree with us that we thought there was a risk based on us looking at data sheets a decade before, I don't think that gets there. Even if you disagree with all that, there is simply nothing that could be more than deliberate. Let's just pick up on that. What, in your view, would be deliberate action above and beyond what happened here? Well, for example, if you told your engineers, do not look at any other patents while you design this. For example, if Syncor had done what most people in their situation would do, which was send us a letter saying you infringe, and the CEO said, I know that letter is coming from Syncor. Rip it up. What about the testimony from Vicor's CEO that said we don't look at Syncor's patents? That doesn't matter to us. Gosh, Judge Shen, that testimony, I know that was their Exhibit 1 in their closing argument on mens rea. It cuts exactly the other way. First of all, he didn't say, and I can give you the testimony's site in the record. It's app 85729331. He didn't say anything about a policy. He just said, I didn't look at the Syncor patents until litigation got rolling. But aren't you again drawing the inferences in favor of Vicor? Oh, I don't think so, Judge Freeman. And the reason I'm not is it's not only deliberate action, which I don't think just not looking at something, that's deliberate indifference. That's not deliberate action. But it's deliberate action to avoid confirming a suspicion. Their only evidence was that he didn't look because he didn't think there was any way they infringed. Now, I'm not saying that the jury was required to believe his explanation. But if the jury disbelieved his explanation, that just gets them to zero. They have the burden. They didn't come forward with any evidence that we took any deliberate action for the purpose of not confirming a high risk. I'm not sure the case law lines up with this conception of deliberate action. It seems to me that the fact patterns of the case law seem to suggest, while as a general matter, not investigating patents is not enough, if there is a pattern of conduct where a defendant is actively studying competitors' products and such, it can get to a point where once they know about these patents' existence and then choosing not to look at those patents and compare them against their own products, that can rise to a level of being a deliberate shielding your eyes to the obvious. Judge Chen, the lodestar under global tech is that deliberate indifference is not enough. But the fact pattern there was enough for indirect agreement liability. Well, it was because they fed false allegation, false understanding to their lawyer to gin up a false opinion, and they purposely said we're not going to look at any U.S. products. We're going to go reverse engineer foreign products so we don't see the patent markings. That is quite different. I guess I'll end my answer here because it looks like – sorry, that's yellow for my opening 11 minutes. I'm sorry. Here there's nothing like that. And I want to emphasize what I was saying to Judge Freeman, which is that even if you considered his not looking at the patents to be a form of deliberate action, it has to be deliberate action for the purpose of not confirming infringement. And it's fine to say you don't have to believe his explanation, but they had to provide some evidence that we had a policy of doing that. Some other engineer says, no, I think our policy was to avoid confirming infringement. There's nothing like that here. They can't simply rely on his explanation, which is clearly not sufficient for willful blindness, and say, well, they didn't have to believe that. Fine, but they still have the burden to come forward with something. They have nothing – and the other thing I would just say is there's clear evidence in the record that as we were developing our technology, we did extensive patent searches. That's at pages 8-5-7-5-0 to 5-1 of the record. And of course, as is undisputed in this case, as soon as they said we infringed, never telling us that directly, just having their experts say it in a trial, we immediately redesigned our products to avoid literal infringement and brought a declaratory judgment action to clear our name. That is simply completely inconsistent with willful blindness. The other thing I would say is even if we lose this point, I don't think we should lose this point, but even if we do, this is nowhere close to the sort of deliberate and intentional action required for willfulness, which is a specific intent. Willful blindness only gets you knowledge. It does not get you specific intent. And then on top of that, under HALO, to get enhanced damages, you need conduct in the sense – like a pirate. I mean, that's what the Chief Justice said in HALO, conduct that's equivalent to roaming the IP high seas and, like, picking off other ships. I mean, there's nothing like that here. As soon as we were told they thought we infringed, we immediately took action to avoid infringement. And no one even argues in this case that our DOE argument – Let me just warn you, you're into your rebuttal time. Okay, well, let me sit down then, and I'm happy to take questions on rebuttal. We'll restore a few minutes here. Thank you. Thank you, Your Honor, and may it please the Court. This appeal focuses on whether there was legally sufficient evidence for a jury to find in Syncor's favor on quintessential fact questions of knowledge and intent. There was ample evidence before the jury for them to reasonably conclude that when Vicor seized the opportunity to offer drop-in replacements for the converters removed from the market through the injunction in the 497 case, that it knew that it was going to cause infringement and that it, in fact, intended to do so. So a couple of points I want to make sure to touch on. The timing is a little tight, though. I mean, the injunction happened when, in 2011? Yes. And the DJ action was in 2011? Yes. So, I mean, when you say that they were trying to seize on some opportunity to, you know, take over the sales of now enjoined competitors, it's an incredibly tight window of time there.  So a couple of things, Your Honor. First, as I think one of your own questions indicated, there is no rule, they don't cite one that says filing a DJ action somehow absolves you of the mental state necessary for inducement. That would suggest that anyone who defends against a claim of induced infringement by virtue of having defended against it, thereby is absolved from the possibility of inducement. It remains a fact question whether they had that requisite mental state. I want to talk about the after period, but let's go to the before period, and that Cisco moment is particularly powerful. So Cisco comes to them in September of 2010, and they say, and this is what the document says, they are very anxious, those are the words, very anxious to understand the non- Cisco suspected or they had an inkling that the products that they were outselling were infringing products. That's right. And they were concerned that Vicor's might be too, and they wanted to understand that position. So we already mentioned the indemnity versus legal opinion, which wasn't provided. Who sought the indemnification in that situation, the Vicor or Cisco? Vicor provided the indemnification. So Cisco has this great opportunity. An important point here is that Cisco is huge, right? They're a great customer to have, and Vicor at that moment in 2010 is on their do not design list. Cisco will not work. Let me just finish with my thought about the indemnification. So was this presented to the jury as evidence of deliberative action by Vicor? A couple of points. It was before the jury. The testimony is at 85737 of the joint appendix. The question for purposes of judgment as a matter of law is whether there is legally sufficient evidence before the jury for it to reasonably reach a particular conclusion. So was it cited in the closing argument? I don't specifically think so. That's also not relevant. So what is the evidence of deliberate acts, though? Okay. So I do want to touch on knowledge, but with respect to deliberate acts, I'd cite two main things. The first is the affirmative decision not to read the patent when you have that subjective belief of a high probability of infringement. Again, we talk about September 2010. Cisco is telling them they're very anxious to understand the non-infringement position. If counsel on the other side is to be believed, they don't read the patent at that point. They wait until December to read the patent because that's when the trial in the 497 case happens. They say they weren't brought in until December or didn't know about it. The CEO was deposed before trial in the 497 case, pursuant to a subpoena. Their position is, well, they didn't read the patent until December. Why aren't they reading the patent? A reasonable jury could conclude from these facts that they knew about the patent, they knew about the anxiety about infringement, and they intentionally didn't read it. And, Judge Chen, you mentioned that the court's cases seem to take a different view from the other side. That's right. So global traffic technologies and InfoHolt, both of those cases, the only deliberate action is the decision not to read the patent. There's some context. They want to distinguish the case based on reasons why they might not have read it. But the only action is the action of not reading the patent. So that's one. Two, I think the Cisco experience, again, is particularly probative. Cisco says what would be most helpful is a legal opinion. Vicor's CEO testifies, being asked on cross-examination, did you provide that legal opinion? No, I did not. Did you provide indemnity instead? Yes, I did. They made the choice to prefer indemnity over the legal opinion. Now, they talk about the redesign. And, Judge Chen, your question about the damages number is very apt on this point. But they still continued, even after this experience with Cisco, they still continued to sell those converters with transition times of under 20 percent. And that's where the judge below said they had an exceptionally weak case on the merits, really no technical defense at all to infringement with respect to those products. But they kept selling them through 2012. What was the amount of those, though? Hearing from the other side, it was quite small. Yeah. So I'm going to help you with this, but it's in the weeds, okay? So the answer is they say it's insubstantial or de minimis. They don't say what number they have in mind, and they don't exactly say how they get there. But based on what they're citing and gesturing at, I think that they are assuming the jury resolved a key factual question in their favor and against us. So there were a few converters, and this is at appendix page, I think, 14 to 15, where the judge addresses these converters, the VIZs 2, 2C, and 1,4, where there was a dispute as to whether they were in the 20 percent or less bucket or the greater than 20 percent bucket. And the judge found, and remember the trial went both ways, there were two patents. So the judge found the jury could reach either conclusion, okay? Now, on this appeal, where it's just the 702 patent issue, we assume all inferences are made in favor of the verdict. So we have to assume the jury agreed with us that those products had the under 20 percent number. If you count those products, it's something like about 200,000 between the issuance of the patent in 2009 and discontinuance in 2012. That's when they stopped selling them. If you exclude them, it's very small. If you focus only on the 2010 and after period, it's closer to about 100,000, which, by the way, when our royalty ask is $60 a unit, that's starting to look very similar to the damages award. We don't know what the jury did, but it's quite possible that they were focused on just those units. How I'm getting these numbers, just to be clear, PTX 2255, it's a native exhibit. It went back with the jury on a flash drive. They actually asked about it while they were deliberating. What the other side cites is the closest thing that you can help in terms of looking at papers here, 76964 of the Joint Appendix. But I admit, even with my new glasses, it's very hard to read those numbers, so you'll probably need to zoom in. I withdraw my question. Okay. The point is that there is a very significant amount of sales of these products that were undisputedly infringing, and it's unapologetic. So when Dr. Vincerelli, their CEO, was asked about this, you know, products with faster transitions or longer transitions, excuse me, but you still continue to sell the other ones and you didn't change those, right? He agreed. That's what he said. So the evidence before the jury is that he kept selling those products, notwithstanding the fact that, at this point, there is no technical defense to infringement. I want to turn to knowledge for a moment because I think, in some ways, the case for knowledge is even easier. The only argument they really have with respect to knowledge is that we have somehow waived the ability to defend the judgment on a ground actually articulated by the district court based on jury instructions that are undisputed and before the jury. The jury was permitted to conclude that there was inducement based on either knowledge of infringement or willful blindness. Our argument was primarily focused on willful blindness. I'll grant you that. But it's not about the closing argument. It's about the sufficiency of the evidence. So the jury instruction includes both actual knowledge and a willful blindness. It absolutely does. But the district court's decision, Jamal's decision, denying Jamal, I didn't see him making any reference to actual knowledge as an alternate basis for supporting 271B liability. He absolutely does, and it's quite important. So I'd like to invite you to take a look at page 31 of the joint appendix. What page? 31? 31. This is in the blue brief and the addendum as well. So at the beginning of the first full paragraph, reasonable jury could reach the findings that it reached on Sienter and willfulness. The key line is, for example, a reasonable jury could have found based on the totality of the circumstances, then he goes through some of the circumstances, that Vicor knew it was indirectly infringing the 702 patent or that it had a subjective high belief, et cetera, that is to say, willful blindness. The district judge's own resolution of the Jamal is either knowledge or willful blindness, which makes sense. That was the instruction before the jury. That is the question for the legal sufficiency of the evidence, and both parties addressed knowledge in the briefs, notwithstanding the fact that our heading Isn't that the first and last time the judge references that Vicor knew? Well, with respect to the next paragraph, it says that it's willful, and willful is only intentional and deliberate on their theory. At the end it says there's Sienter and willfulness. But that really is The willful infringement analysis that follows seems to be premised a little bit on the willful blindness theory. You know, the way it describes the Arctic Cat opinion. I think that's So for Arctic Cat, I don't believe it's a willful blindness case. It's not, but I mean the way the judge describes the facts of Arctic Cat seem consistent with a willful blindness type of theory. It could be. So therefore, I don't know, one way of reading this opinion is he was supporting the 271B liability theory under willful blindness. That seems to be the bulk of the discussion. And then for willful infringement, there's a continuation of that willful blindness notion to support a willful infringement. Here's what I'd say. I want to talk about whether it's even possible to have the kind of waiver they're talking about because there's no case that holds such a thing. But when you're saying that his analysis focuses on willful blindness, he's recounting in the prior pages each side's arguments, which do focus on willful blindness. I want to get into the briefs and show how we talked about knowledge there, too. His analysis, you say, is this the beginning and the end? His analysis is page 31. He talks about sinkhorse position. He talks about vicorse position. His analysis is both parties presented substantial evidence on indirect infringement. A reasonable jury could have considered this to find that there was the requisite intent. When it says requisite intent, requisite is required under the law as instructed to the jury, which allowed for either inference to be made. And then when he says what he means by that, he identifies either inference. So we are defending the judgment on a ground actually articulated by the district court. They want to reverse the district court's judgment on the ground that we waived something where the district court said it. On top of that, it makes sense that the district court said it because the instructions permit it and because the briefing talked about knowledge and willful blindness both. So, for example, I'd invite you to talk, again, in the sections focused on willful blindness, 51-409, we talk about sufficient evidence of knowledge as well as, I think it's 51-410-11, and then 51-412, we talk about how vicorse says there's insufficient evidence for knowledge and we rebut that contention. So over three pages, three times, we talk about knowledge. So it makes sense that the district court picked up on it. It also makes sense, frankly, that we talked about only one of these theories in front of the jury primarily because there is some tension, right? You either know something or you don't quite know it, but you pretty much know it and are not trying to confirm it. You choose one lane or the other. But the Herrada case that they cite for this idea of inconsistency is a case about how it's proper to give the jury both instructions. It's a criminal case. If the government says knowledge but the jury could infer either knowledge or willful blindness, you give the jury both instructions because the jury might actually reject one and accept the other, which we can presume the jury did here. I just want to say on this last point, they haven't cited a single case in which an appellee and verdict winner on JMAW is defending a judgment following a jury trial and is somehow disabled from identifying evidence or arguments that would support that theory. There's no rule of waiver that says the fact that our closing argument focused on one version rather than another somehow disables us. Can you give me the jury instruction site again? Yeah. So the 8-6-2-5-6 is inducement. Willfulness is 8-6-2-6-0. That's just intentional and deliberate. There was no instruction that permitted a jury to find willfulness based on willful blindness alone. I'd like to move to the last minute of your time to talk about exceptional case. Sure. You didn't win very much of this case. In fact, you won a very – I'm not talking about the damages amount. I'm talking about where you started out with 100 claims across four patents. You ended up with a couple of claims in one patent. What – I'm just – I'm struggling with the evidence on what makes this stand out from the rest. Great. Because I preside over a lot of cases that start out big and whimper away small. Great. So let me start with this. As this court recognized in S.C. Johnson, it has literally uniformly upheld exceptional case determinations when there's a finding of willfulness. This would be the first time that I'm aware of. Since octane fitness, the rule is the same. They mentioned striker in the reply brief as an exception. It's not an exception. What happened is that the Supreme Court had decided octane fitness, changing the standard. This court remanded to the district court. I'm not questioning enhanced damages. This is exceptional case. Exceptional case. That's what I'm talking about. Okay. So when there's willful infringement, that is a ground for exceptional case. S.C. Johnson says uniformly upheld. I didn't see the district court rely on that, though. So I think that the way to – I don't think it specifically calls out willful infringement as such, but it talks about the same evidence, which is that it's especially egregious infringement conduct. That's at 78 in the exceptional case discussion. And then on top of that – and I'm at the end, so I'll just finish this one point. The district court, which was best positioned to see this, saw that they had an especially weak equitable defense that they multiplied the proceedings with. They re-argued claim construction over and over and over, and they also had legally baseless state law claims that pervaded the proceedings. I didn't see in the summary judgment order that the court called out that the claims were legally baseless. In fact, it's a pretty straightforward standard summary judgment order saying they're disputed facts. The judge could have criticized the weakness of those claims in the summary judgment order and did not. May I respond, Your Honor? Yes. Okay. So with respect to, for example, equitable estoppel, they said that they would have evidence of reliance. The judge said, okay, it's a fact question. But then when it comes time for trial, their CEO said, never have I ever relied on anything Syncor has ever done. So it was reasonable in summary judgment to believe what they said. Then they said something different at trial. Thank you. Thank you. You've got 30 minutes. Thank you, Your Honor. What my colleague just said about the grounds for waiver under Fifth Circuit law is completely wrong, and I hope I have a chance to explain why because it's wrong on about four different levels. We did cite cases in exactly this posture. The case called Wackman we cite in the brief under the Fifth Circuit rules. In that case, the plaintiff had won a tortious interference with bequesting property claim. It went up on appeal. The defendant argued there's a legal problem with the theory they argued below, which was tortious interference with a will. The prevailing plaintiff said, fine, but you can uphold the judgment because there was also evidence of tortious interference with a trust. The Fifth Circuit said two things. One, the jury instructions did permit the trust theory. The jury could have found it based on the instructions, but two, it was waived and they were stopped from defending the judgment on that ground because they didn't argue to the jury. That's one. Two, under the Montana case under Fifth Circuit law, a party can make an admission in closing argument that binds that party on appeal. There, the government had conceded causation at closing argument. Here, they have conceded no actual knowledge, and the reason they have is that willful blindness is logically inconsistent with actual knowledge. Willful blindness is a lack of knowledge intentionally under the specified circumstances. They didn't argue actual knowledge, and in the alternative, you should at least think willful blindness. They only argued willful blindness in their opening and their closing. Three, there was a battle over jury instructions. They wanted an instruction that said, don't consider the evidence relevant to our state law claims after we got a 50A against us on those. We said, no, that's still relevant to your intent. They told the judge, no, you misunderstand our theory of intent. It's only willful blindness, and then they had an argument why it's not relevant to that, and they got an instruction over our objection. That's judicial estoppel under Opelousas. Do you have a site for that? Opelousas is judicial estoppel. No, the site where they made the concession that you say they said. Yes, Your Honor. The site for that is – I'm sorry. I thought I had it. Oh, here it is, 86218. Finally, in their Rule 50B opposition, they did not respond to our claim that there was no evidence of actual knowledge under this court's decision in Promega that an appellee can also waive by not raising an argument in response to a 50B. That's four reasons they've waived. Now, let me explain why that really matters here, and this goes to some of Judge Freeman's questions about the allegedly literally infringing devices. Perhaps they could have had a theory on actual knowledge post-December 2010 on those devices. We still think we had good arguments that if we file a declaratory judgment action, we don't have the inducement intent. But say you disagree with all that, as my friend said. I didn't hear any response to him on how we could possibly be willfully blind after we file a declaratory judgment action. We've had counsel look at the claims, look at the products. We've asked the court to look at it and decide in our favor, and that's the only theory they pursued below, and the reason that's the only theory, if I could finish the sentence. This is what's really important. The reason that's the only theory they pursued below is they were seeking damages back to 2006 on another patent. They had no case for actual knowledge for the vast majority of that period, so they put all their eggs in the basket of willful blindness. Now they're trying to shift theories on appeal to defend the very minor judgment they got, as Judge Freeman points it out. So with that, we'd ask the court to reverse. Okay. We thank the party for their arguments. The case will be taken under submission.